IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| TARVIN JERNARD, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NO. 4:11-CV-17-CDL-MSH |
| | * | 42 U.S.C. § 1983 |
| BRIAN OWENS, *et al.*, | * | |
| | * | |
| Defendants. | * | |

## REPORT AND RECOMMENDATION

Presently pending before the Court is Defendants William A. Adamson, Geter W. Boone, Hiawatha Covington, and Fernando Richards' Motion for Summary Judgment. (ECF No. 65.) Plaintiff responded to the motion on December 12, 2011 (ECF No. 78), and on the same date, also filed a Motion for Summary Judgment (ECF No. 79). For the reasons stated below, Defendants' motion should be granted and Plaintiff's Motion should be denied.

### DISCUSSION

**I.    Standard for Motion for Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure, addressing Motions for Summary Judgment, provides as follows:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Under the procedures and policies of this court, motions for summary judgment are normally decided on briefs and supporting documents. The court considers the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted by the parties, in deciding whether summary judgment is appropriate under Rule 56. The parties may submit their argument to this court by filing briefs in support of or briefs in opposition to said motions.

Additionally, the Middle District of Georgia, under Local Rule 56, requires movants to attach to their motion for summary judgment a "separate and concise statement of the material facts to which the movant contends there is no genuine issue to be tried." The non-movant must then respond "to each of the movant's numbered material facts[, and] [a]ll material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. Local R. 56.

The law provides that the party against whom summary judgment is sought must be given ten (10) days' notice of the summary judgment rules. In addition, the party against whom a Motion for Summary Judgment has been filed has the right to file affidavits or other material in opposition to a summary judgment motion. If he fails and refuses to file any affidavits or other materials in opposition to the Motion for Summary Judgment, a Final Judgment may be rendered against him if otherwise appropriate under law.

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot simply rely on the pleadings.  Rather, in order to establish that a genuine issue of material fact exists, he must respond by filing affidavits, depositions, or other materials to persuade the court that the case must be presented to a jury for resolution.  *See Van T. Junkins & Assoc. Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

## II.    Plaintiff's Claims

Plaintiff brought this action pursuant to 42 U.S.C. § 1983, against William W. Adamson, now former Warden of Muscogee County Prison; Geter Boon, former Deputy Warden of Security for Muscogee County Prison; Hiawatha Covington, Deputy Warden of Administration of Muscogee County Prison; and Fernando Richards, Mail Room Officer of Muscogee County Prison. (Compl. 5, ECF No. 1.)  In his Complaint, Plaintiff contends that he was unconstitutionally denied access to a "Prisoner Self Help Litigation Manual" he had ordered. (*Id.* at 9.)  He further contends that after he was denied access to the manual, he was denied mail which included copies of forms from the manual. (*Id.*) Specifically, Plaintiff alleges that, in denying him access to the manual and the copies, the Defendants deprived him of his "substantive right to reading material secured by the

First and Fourteenth Amendment(s)." (*Id.* at 17.) He further alleges deprivation of his First and Fourteenth Amendment rights to "receive information and ideas." (*Id.*)

## III. Qualified Immunity

Defendants contend that Plaintiff's action should be dismissed because they are entitled to qualified immunity in their individual capacities. (Mot. for Summary Judgment 1, ECF No. 65, 66.) Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established right of which a reasonable person would have known. In sum, qualified immunity is a guarantee of fair warning. *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999). Specifically, "[t]he doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (internal quotation marks omitted). The first qualified immunity inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, the facts show that the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) *overruled in part by Pearson v. Callahan,* 555 U.S. 223 (2009) (based on the circumstances of the particular case, the courts are now able to decide which of the two inquiries should be addressed first); *Seigert v. Gilley*, 500 U.S. 226, 232 (1991). The second qualified immunity question is whether the right violated was clearly established at the time of the alleged wrongful acts. *Id.* at 201. "The

4

contours of the right must be sufficiently clear that a reasonable official would understand that he was doing violates that right." *Id.*  If either element of the qualified immunity test is decided against the Plaintiff, the Defendant is entitled to qualified immunity.

Under qualified immunity analysis, the public official must first prove he was "engaged in a 'discretionary function' when he performed the acts of which plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The burden then shifts to the plaintiff to establish that qualified immunity does not apply.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004).

In the instant case, the facts, even taken in a light most favorable to Plaintiff, establish that each of the Defendants was acting within the bounds of their authority at the time of the acts in question.  Specifically regarding Defendant Adamson, as the Warden he was responsible for reviewing the formal grievances filed by inmates. (William Adamson Aff., ¶5, ECF No. 67-1.)  The facts reveal that after receiving the grievances written by Plaintiff concerning the denial of the manual (Grievance # 61733; ECF No. 67-3) and the photocopies (Grievance # 69638; ECF No. 67-3), Defendant Adamson determined that based upon the prison's Standard Operating Procedure ("SOP"), the manual and photocopies were indeed contraband and Officer Richards' decision that Plaintiff could not have access to them was appropriate. (Adamson Aff. ¶¶ 16, 17.)  As to Defendant Deputy Warden Geter Boone, the prison SOP states that as a Deputy Warden for Security, he was responsible for security-related issues at Muscogee

County Prison. (Geter Boon Aff. ¶ 6, ECF No. 67-2.) In this case, Defendant Boone, in the regular course of his business, denied Plaintiff access to the litigation manual, averring that based on its size, the manual was deemed "nuisance contraband," and Plaintiff's possession of it would have created a risk to the health and safety of other prison employees and inmates. (Boone Aff. ¶¶ 8,9.) With regard to Defendant Deputy Warden Covington, who is the Deputy Warden of Administration, he is responsible for ensuring that the grievance guidelines set by the Georgia Department of Corrections and the Muscogee County Prison ("MCP") are followed. (Hiawatha Covington Aff. ¶¶ 6, 7, ECF No. 67-3.) In this case, Defendant Covington merely saw that the grievances filed by inmates, including those by Plaintiff, were properly handled by MCP employees by forwarding them to the employee that is the subject of the grievance. (*Id.* at ¶36.) Lastly, as to Defendant Officer Richards, a mail room officer at MCP, the facts show that when photocopies from the litigation manual arrived at the prison, Richards inspected them and determined that pursuant to SOP IIB06-0001[1] the photocopies were contraband.

There has been no evidence that would show that any of the defendants acted outside of the scope of their "discretionary functions" as employees of Columbus, Georgia, in this case. Because each of the defendants was acting within the scope of their employment pursuant to the Georgia Department of Correction's SOP, the burden then

---

[1] SOP IIB06-0001allows inmates to possess personal and issued property, to include legal material, books, magazines, printed material and photocopies. (SOP, Exh. B, ECF No. 67-1.) Subject to the aforementioned qualifications, these items must be mailed directly from the publisher, dealer or established attorney of record. (*Id.*)

shifts to the Plaintiff to show that the Defendants are not entitled to qualified immunity by demonstrating that any of his clearly established constitutional rights were violated.

### A. First Amendment Rights

Plaintiff argues that his First Amendment rights were violated when he was denied access to the litigation manual, and later, the photocopies from that manual. The United States Supreme Court, in ruling on this issue has held that "the First Amendment entitles a prisoner to receive and send mail, subject only to the institution's right to censor letters or withhold delivery if necessary to protect institutional security, and if accompanied by appropriate procedural safeguards." *Hudson v. Palmer*, 468 U.S. 517, 547 (1984)(citation omitted).

In *Turner v. Safley*, 482 U.S. 78, 81 (1987), the United States Supreme Court set out a four-factor analysis to determine if a prison regulation limiting the First Amendment is reasonably related to a legitimate penological interest: (1) whether there is "a valid, rational connection between the regulation and the prison legitimate governmental interest;" (2) "whether there are alternative means of exercising the right;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources;" and (4) "the existence of obvious, easy alternatives[, which] may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89–90  (citations and internal quotation marks omitted).  Here, each *Turner* factor has been met.

First, the rational connection between the regulations limiting what items inmates can possess and legitimate government interest is security.  Prisons must be able to

7

maintain security and avoid potential hazards that might occur if there was no limit to the amount or size of items inmates could possess.  Second, Plaintiff has not been forever deprived of the manual he seeks, and, in fact, was offered the opportunity to donate it to the prison library so that he could have access to it (Daniel King Aff. ¶7, ECF No. 67-4); Plaintiff refused that option.  Furthermore, as the Defendants noted, SOP IIA14-0001 requires that prison law libraries within the State of Georgia provide inmates access to state and federal habeas corpus forms, pleading forms under 42 U.S.C. § 1983, state inmate action forms as provided in O.C.G.A. § 9-10-14, applications for leave to file second or successive habeas corpus petition forms under 28 U.S.C. § 2244(b), and applications for leave to file second successive motion to vacate, set aside or correct sentence forums under 28 U.S.C. § 2255.  (ECF No. 67-3.)  Third, the impact of accommodating Plaintiff's requests would have a negative impact on the prison.  "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90.  Allowing Plaintiff to possess the manual in his cell could create security concerns.  To allow one prisoner to possess materials that were against regulations would open a floodgate of requests by other prisoners and could create a potentially hazardous and unsecure situation.  Lastly, the alternative to the regulations, which would require that the prison libraries stock every potential legal form an inmate might want, is impractical, to say the least.

    Finding that the regulations limiting what items an inmate can possess to be legitimately related to MCP's security interests, the evidence in this case fails to show

that Plaintiff's First Amendment rights were violated.  Therefore, no further analysis is required.  As such, Defendants are entitled to summary judgment as to any claims made against them in their individual capacities.

## B.  Fourteenth Amendment Claims

Plaintiff's Fourteenth Amendment claims allege a violation of his due process rights. (Compl. 17.)  The Due Process Clause of the Fourteenth Amendment, in relevant part, states that "nor shall any State deprive any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV § 1.

The United States Supreme Court has held that a prisoner's claim for deprivation of property does not amount to a violation of due process under the United States Constitution whether the deprivation of property resulted from an intentional, non-negligent act of a state employee or pursuant to an established state procedure as long as the state provides an adequate post-deprivation remedy for the prisoner's property loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986).  The State of Georgia provides adequate post-deprivation remedies whereby Plaintiff may sue the defendants in the state courts and recover any damages due him for the loss of his property.  *See* O.C.G.A. § 51-10-1.  Such a cause of action still remains available to Plaintiff.[2]  Thus, because an adequate post-deprivation remedy exists in Georgia state courts, no procedural violation can be found to have occurred in violation of the

---

[2]  O.C.G.A. § 9-3-32 provides:  "Actions for the recovery of personal property, or for damages for the conversion or destruction of same, shall be brought within four years after the right of action accrued."

9

Fourteenth Amendment in this case.

Based on the foregoing analysis, it is apparent that none of Plaintiff's constitutional rights were violated by the Defendants' denial of the manual and photocopies. Thus, the plaintiff failed to meet his burden of showing that the Defendants violated a constitutional right. *Holloman*, 370 F.3d 1252, 1264 (11th Cir.2004). Therefore, no further analysis is required. As such, Defendants are entitled to summary judgment as to any claims made against them in their individual capacities.

## IV.    *Monell* Doctrine

Defendants also argue that to the extent they are being sued in their official capacities, they are entitled to summary judgment pursuant to the *Monell* doctrine. It is first noted that official capacity claims are tantamount to a suit against the governmental entity involved[.]" *Jones v. Cannon*, 174 F.3d 1271, 1293 n.15 (1999).   In this case, the Defendants are each employed by Columbus, Georgia. Thus, the claims made against the Defendants in their official capacities are in essence claims against the City of Columbus.

*Monell* states that a governmental entity or municipality may only be deemed a "person" for purposes of § 1983 liability if the Plaintiff shows that an "official policy" of the entity causes a constitutional violation. *See Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, a plaintiff must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."

10

*McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir.2004) (citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)). "[T]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Turner v. Jones,* 415 F. App'x 196, **5 (11th Cir. 2011); citing *Depew v. City of St. Mary's,* 787 F.2d 1496, 1499 (11th Cir. 1986). As the Supreme Court has clearly explained in *Board of County Comm'rs of Bryan County v. Brown:*

> It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

520 U.S. 397, 404 (1997).

A review of the pleadings reveals that Plaintiff has failed to allege that an official policy or practice of the Columbus Consolidate Government violated his constitutional rights. Therefore, Plaintiff is wholly unable to establish that there was any city policy that contributed to said violation. Thus, Plaintiff's claims against the Defendants in their official capacities must fail.

**V.     Pending Motions**

Plaintiff has filed several motions that are currently pending including: a Motion for Summary Judgment (ECF No. 79); a Motion to Compel Discovery or in the alternative a Motion to Amend his Discovery Request (ECF No. 81); a Motion fro Declaratory Judgment (ECF No. 82); a Motion to Amend his discovery request (ECF No. 83); a Motion for Appointment of Counsel (ECF No. 89); and a Motion for Jury Trial

(ECF No. 90). Pursuant to the findings above, it is recommended that each of the pending motions be DENIED as moot.

## CONCLUSION

WHEREFORE, IT IS HEREBY RECOMMENDED that Defendants' Motion for Summary Judgment be GRANTED for reasons explained above. Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may file objections to this Recommendation in writing with the United States District Judge within FOURTEEN (14) days after being served with a copy hereof.

SO RECOMMENDED, this 10th day of May, 2012.

S/ STEPHEN HYLES
UNITED STATES MAGISTRATE JUDGE